Right outside the door. All rise. I guess you didn't get your announcement. Judge Lee, would you like me to call the case? Sure. Okay. Good morning and welcome. I'm calling the case of Newpoint Financial Corporation v. Bermuda Monetary Authority. Will the appellant please state his appearance for the record? Yes. Good morning, Your Honor. Peter L. Steinman on behalf of Appellant and Plaintiff Newpoint. How much time would you like to reserve for rebuttal? I would like to try to reserve five minutes, Your Honor. All right. Go ahead, please. Thank you, and may it please the Court. First, I would like to thank the Court for the courtesy shown in continuing the hearing due to my family illness. I much appreciate it. We believe that the district court erred by dismissing defendant, the Bermuda Monetary Authority, or BMA, based on sovereign immunity and dismissing the individual defendants, Mr. Giacondi and Ms. Davis-Crockwell, based on lack of personal jurisdiction. The BMA Act… Did you take any jurisdictional discovery? No, Your Honor. We did not. Did you ask for any? We did not. It was a facial challenge to jurisdiction. We would have if there had been a hearing on the second motion to dismiss. We would have requested after reviewing. So who are the third parties that allegedly received these defamatory statements in California? Who are they? You don't identify them in the original complaint or the First Amendment complaint. Who are they? Your Honor, we don't have – I do not have the specific identity of those individuals at this time. But if we were granted leave to amend, we would ascertain that information. So how do you know they exist? Well, we know they exist from – my client knows they exist from conversations that they have had with the third parties. Can you elaborate on who it might be? It seems odd that Bermuda Monetary Authority would be communicating this fact to other third parties in California. Can you be a little bit more specific of who it might be, even if it's not a particular name, and who are these people? Certainly. There are other businesses, other businesses in California that do business in Bermuda, including other businesses that operate here and run insurance companies, both in Bermuda and the United States and around the world. Let me just say that the insurance regulatory industry around the world is a relatively small and insular group, so that whereas here, one regulator makes a determination, that affects subsequent applications around the world. And the issue here is, is that not that the Bermuda Monetary Authority, the regulator in Bermuda, denied my client's application, Newpoint's application for a controlling interest in an insurance company. We're not challenging that decision here. What we're challenging are the extra administrative statements, the defamatory statements that were made, and as we have alleged, were made, transmitted to California. I guess I'm still unclear. I presume you did a Rule 11 investigation before filing the original complaint, and you're saying that your client spoke to some third parties, so you know they exist, but you have no idea who they are, and your client doesn't know who they are. That just seems very odd if a good faith Rule 11 investigation had been conducted. We did so, Your Honor. And you don't know, and your client doesn't know who they spoke to. That's what doesn't make sense. Your client spoke to a third party, but does not know the identity of the third party with whom they spoke. The identity has not been revealed to me at this time, Your Honor. But that's not the question that the judge asked. The question asked whether your client knows the identity and told you the receipt has been made by California companies, but will not tell you who that identity is? Are you telling us that? Let me rephrase. When we did our investigation before filing the complaint, we were told that these defamatory communications were committed to third parties in California. I have not been told who those third parties are. If we are granted leave to amend, we will ascertain that information and include it in the amendment. In your original complaint, you just said upon information and belief, the above defamatory, malicious, inflammatory, and false statements were not only provided to Newpoint, but were also provided to third parties through written and verbal publications. You didn't say that any of those third parties were in California. The district court's first motion to dismiss order was very explicit. You have to make that connection with California. And so then in your first amended complaint, all you say is on information and belief, including somebody in California. It just seems, it says, you know, upon information and belief, was provided to third parties through written and verbal publications, including persons in California. You were already on notice that you had to provide that information in the first motion to dismiss order. It just, it feels like there's artful pleading here just to take advantage of the motion to dismiss standard. Why didn't you ask that question? But, you know, let me ask something else because perhaps it's best to move on. The statements that you believe were falsely made by these Bermuda officials, how is that outside the scope of their duties as BMA employees? Because you want an injunction against them in their personal capacity for acts outside any legitimate administrative function. Thank you, Your Honor. What acts are you even referring to? Well, again, the acts are that the statements were not necessary to the BMA's decision. The BMA's decision, as is most regulators' decision, is based on two things in reviewing an insurance application. It primarily rests upon the applicant's financial ability and their corporate structure. The BMA regulators, the individual defendants, went well beyond what was necessary to deny this application by instead making the defamatory statements that we quote in the complaint and in the First Amendment complaint, which are- Aren't those the reasons why they denied your application? No, they're not. The only reason, the only legitimate reason, we contend, Your Honor, is that the new point did not meet the BMA's statutory requirements, financial requirements. The statements that, for example, that BMA executives were untruthful or that the BMA executives wouldn't follow their directives or that the BMA executive had submitted false information to other regulators- Like Gibraltar. Like Gibraltar, was outside and unnecessary and gratuitous, and it has created serious harm to our clients, the harm in which we're seeking redress. Are you claiming that if they did make improper responses to other regulators, that would not be a basis for denying you certification? Your Honor, I don't think it would be a basis, but- The regulator can't deny you a company when it hears that you're lying to other people? Well, the administrator might be able to do so, but even under Bermudian law, the administrator would be required to at least provide that information to Newpoint, so Newpoint could have rebutted it. As we stated in the complaint, that's not what the Bermudian Monetary Authority did. In fact, they did the opposite. They said that they could not release the information, so our clients were in an impossible situation, but again, we're not seeking to reverse the BMA's administrative- But this is what I find somewhat confusing. You're okay if the BMA makes those same statements. Your only problem is if these individuals make those statements in their personal capacities. No, I don't think that's a fair statement, and if there's some confusion, I apologize. We sued both the BMA and the individual defendants based on Respondent Superior. The individual defendants made the statements, as any body must do through live persons. Those statements, we contend, were not necessary for the administrative decision, went well beyond any legitimate reason, and have defamed and harmed Newpoint. So where do you plead in your complaint any threat of ongoing or future harm by these individual defendants acting in their personal capacities? We plead in- One second, Your Honor. How is that any other than vague and conclusory? I just have a concern that there's a lot of artful pleading here to take advantage of the motion to dismiss standard and to just throw out these unsupported conclusions and allegations. What's your response to that? Well, Your Honor, under Rule 8, we're not required- This is not a fraud action. We're not required to plead specifically. I understand Your Honor's concerns, and if that is a concern, again, if that is a determinative concern, again, we would ask the court for leave. What the district court did was the district court weighed, we believe impermissibly under Berry, weighed the allegations of the complaint and held that based on the court's weight, the district court didn't believe them and found them, therefore, insufficient. I understand that you believe we're engaging in artful pleading. I disagree. I believe that we met the pleading standard. I believe that what the district court did was, again, impermissibly weigh the credibility of the allegations, and I think under Berry and other Ninth Circuit authority, the district court is required at the pleading stage to not only not weigh those allegations but to give our client, the allegations, the benefit of the doubt. That clearly did not happen. Counselor, in answer to Judge Coe's question, where do you plead? Upon what facts do you conclude that the defendants, quote, will continue to maliciously publish and disseminate false and defamatory statements regarding Newpoint? What facts do you have? The fact is that we know after the complaint and even the First Amendment complaint was filed that defendants have continued to publish the same defamatory statements to other regulators and other persons. To whom? And that is continuing to present a problem for our client. To whom have they published after their first publication? Well, again, Your Honor, I ask that if that is a determinative fact that we be given leave to amend and we will identify those persons. You were already given leave to amend once, and you don't have any facts here about any persons that received this that are California citizens or California residents. All right. But you want to save some time for rebuttal. All right. You have two minutes and 42 seconds for rebuttal. Thank you, Your Honors. Go ahead, please. You're on mute. I can't hear you. Thank you, Your Honor. Good morning, and may it please the Court. Michael Madigan for the Appellee's Bermuda Monetary Authority, Gerald Gakunde, and Susan Davis Crockwell. The district court was correct to dismiss Newpoint's complaint against the court against the defendants. I'd like to focus here in my comments this morning on three main points. The first is why the court was correct to dismiss the claims against BMA on the basis of sovereign immunity. The second is why the court was correct to dismiss the claims against the individual defendants on the basis of lack of personal jurisdiction. And the third is to underscore some additional reasons that also support the court either didn't adopt or didn't address, specifically common law sovereign immunity for the individual defendants and Rule 19. Focusing first on the sovereign immunity of the BMA, the parties agree that jurisdiction over the BMA is governed by the FSIA. The parties also agree that the BMA is an agency or instrument. Can I ask you about the individual defendants? Of course. The second motion to dismiss order, the district court said plaintiff provides no new facts, suggesting the letters were sent to anyone in California other than itself. That does seem to be an error, correct? Because the complaint, when it was amended, does add the language including persons in California. So would you agree that's an error? I think what the court, the way I understood what the court was trying to say, Your Honor, what I think is correct is that there is no, there is that general allegation. Yes. So if the court meant there was no general allegation, then that statement wasn't correct. But I think what the court meant is there's nothing specifically identified. All that said is it was sent to other persons in California and there were no specific other people identified. And in response to your questions, it was clear that, made clear a moment ago that Newpoint doesn't know even who those people are. So I don't think it was incorrect, as I understood what the court was trying to say. And I do think that for jurisdictional purposes, the plaintiff needs to plead the facts that establish jurisdiction. Doesn't the fact that the allegation says there were missives sent to people in California establish the jurisdiction? No, that's not enough, Your Honor, to establish the jurisdiction. The discussion came up in the context, as the court knows, of the effects test. And there's more than foreseeability of harm in California. That's necessary to support jurisdiction in California. The mere fact that that allegation, that letters were sent to California, does not create a sufficient nexus with California. That's a 12B6 issue. Right. That's a 12B6 issue, which we don't have before us. In other words, there's an element missing, which is the foreseeability. Well, I think the personal jurisdiction cases, such as Calder, Brainard, and Walden, also, Your Honor, say that there is more that is needed for personal jurisdiction under the effects test to establish personal direction. More is needed than foreseeability of harm. In other words, you say that the plaintiff must plead for 12B1 purposes that the persons who received the missives from the individual defendants were in a position or place to harm the plaintiff? I may have missed a word in that question. I'm sorry. You're saying that foreseeability has to be pleaded to establish 12B1 jurisdiction over the defendants? I think that 12—let me try to say it this way. 12B1 jurisdiction depends on the defendants' contacts with the forum, not on the fact that the plaintiff happens to be in a forum. Well, the allegation in paragraph 12 of the first amendment complaint is that these people were in California and received the missives. Yes, and the court— They're connected with the forum, right? By the allegations of the complaint. Yeah, the court found, and we agree that that allegation was not sufficiently specific. It's not really an allegation of fact, which is what is necessary. It's a mere— What fact is missing? They're Californians. They're located in California. They received the missives. What fact is missing as far as the effects test? Well, some of the things that I think would need—should be pled to establish— should have been pled in response to the court's order would include things like, who are these people? Even what category of people? What was transmitted to them? Those are factual issues you can go into in discovery and make a motion of summary judgment. Suppose all these issues— Suppose all these missives were sent to a disc jockey in Pasadena, right? The disc jockey would have no bearing at all on the business of Newpoint. And you might make a motion for summary judgment and prevail. But at the pleading stage, you don't have to plead the facts of who received these and that they had the capacity to damage plaintiff, do you? I think—so there's two issues I would raise in response to your question, Your Honor. The first is, I think that under the jurisdiction analysis or under the Rule 12 motion that we brought, not just 12b-6, the facts need to be plausibly alleged, which is what the district court said. I don't think it's necessary to—I think even taking the complaint as it's pled, the facts are not enough, but the district court said they're not plausible. If I can interrupt, it's plausible something like this might happen. Maybe the individuals here at the Bermuda Monetary Authority attends a conference in Los Angeles. They're at the bar having a few drinks, and they start kibitzing with people in California and talking about Newport Financial. I mean, that's plausible. Whether they can actually show that, I mean, isn't that—then we just have— you can have jurisdictional discovery and see if there's actually any meat to that. But, I mean, at this stage, isn't the solution here just to have district court conduct allowed jurisdictional discovery? Your Honor, the plaintiffs, as you know, did not allege what you just said. Yeah, they kept it very vague, but it's plausible something like that happening. If they allege that in the complaint, it would be a different complaint, so I'd have to think about whether that's plausible or not. Even that, I'm not sure in the abstract. But I think in the context of foreign sovereign immunity, to conclude that there is personal jurisdiction over employees of a foreign sovereign for exercising their duties and sending letters to people in California without more detail than just saying the letters were sent really undermines, I think, to some extent, the principle of sovereign immunity. But would they, in that hypothetical, would the individuals be acting under the authority of the sovereign if they, again, just attended a conference in L.A. and had a couple beers and was just kibitzing and gossiping with people in California and the industry? Well, I think they would be probably attending the conference, potentially, in connection with their duties, but it's possible. Again, I don't know what the complaint said. I can imagine a scenario in which facts could be pled that might be outside the duties, but this is not that case. There was nothing that was alleged. They had the chance to allege that. And, in fact, the complaint is very clear that they are, in fact, complaining about what Ms. Sturgacunde and Ms. Davis-Crockwell did in connection with their duties. There is no allegation that these missives were sent in anything other than the carrying out of their duties for the authority. Can I ask you, if an injunction is written to apply to those two individuals in their individual capacities only, how would that bind the BMA? I mean, I agree with you. There's no allegation here that they've done anything outside their official capacities or that they would, but assuming that an injunction could be limited in that way, how would it bind the BMA? I think, Your Honor, so I'd make two points. Number one, I think the question goes to what it means to enforce a rule of law against the BMA. The district court found that you could only enforce a rule of law against the BMA if you impelled payment for the Treasury or compelled through an injunction it to do something. But that, I think, is too narrow a view of what it means to enforce the rule of law, and I think that's evidence from some of the Ninth Circuit's own cases, including the Barat case, where the court found that there was a rule of law enforced, even though it was a similar situation to this in one respect, which is that actions were challenged after the fact as violating torts. But I think the other answer to your question, Your Honor, is that the only conduct that the defendants have engaged in is, in fact, their conduct, as you noted. So the injunction that's being requested really is intended to limit their ability to carry out their duties. The allegation is that they made these statements personally, even though the complaint makes clear, I think, that they did that in the course of their duties. So I hope that responds. What does it mean to you that the judgment against the individual defendants would affect a rule of law? What does rule of law mean under the restatement? What it would say, Your Honor, is that these enforcement authorities in Bermuda can be sued in California for carrying out their duties at the PMA, consistent with the authorities' understanding of Bermuda law and their duties under Bermuda law. And so to say that that's a violation of California law for them to do that would, in fact, have the effect of enforcing a California rule against their conduct in Bermuda. But that wouldn't cause the BMA to be subject to any judgment in California, would it, if the BMA had a sovereign immunity act immunity? I think if BMA were not a party, it would not be subject to any judgment in California. I think that's true. But I think the BMA might have to or would have to change the manner of its regulation and its conduct based on the rulings that may come out in California. Why couldn't Bermuda, a sovereign country, just thumb its nose at California? Sorry, say that again, please. Why couldn't Bermuda, as a sovereign country, simply thumb its nose at California? Well, I think its employees, its enforcement authorities, and the hypothetical, as I understand it, would be subject to the... The employees might be subject, but BMA wouldn't be subject to any judgment. Therefore, why would they be subject to a rule of law? I think because its employees would be subject in the carrying out of their duties. Assume we were to find that the individual defendants purposely directed their activities to California and that Newpoint's claim arises out of those activities. What is the reason why exercising jurisdiction would be unreasonable here? Your Honor, I think all seven factors that are used to evaluate reasonableness cut against the exercise of jurisdiction in this case. And I'd like to emphasize a few of them. At a high level, I think the answer to your question is that even if you assume that type of contact with California, the extent of interjection into California affairs is very minor, minimal, and the burden on the defendants and the extent of the potential conflict with Bermuda law and the BMA's sovereignty is substantial. In addition, California would have little interest, low interest, in adjudicating a dispute over plaintiffs' attempts to acquire a form in Bermuda... excuse me, an insurance company in Bermuda, and there's an existence of an alternative form in Bermuda as well. And so for all of those reasons, I think it would be unreasonable under Corvent and other cases to exercise jurisdiction here. There's simply nothing to suggest that these individuals doing their job at the Bermuda Monetary Authority thought that they were doing anything in the course of carrying out their duties to be subject to being sued in California. Well, they were badmouthing Newpoint by the statements that other regulators had talked badly about Newpoint. That wasn't really necessary, according to counsel for the appellant, in order to turn down their application. But it's important to focus on what he said, Your Honor, which is they said more than was necessary under Bermuda law. That was his comment. That was his comment. That's based on the claim that they didn't carry out their duties properly under Bermuda law. And the language that they're complaining about is language from the statute, fit and proper person is a statutory term. And so it really is tied up with the exercise of their carrying out of their duties. And they're complaining that the way you did your job, we didn't like that you said these things about us. You're saying that their allegation of improper conduct is based on Bermuda statute. Is that correct? Mr. Steinman just said that in his argument, and I do understand that to be their claim, that they did more than was necessary. Their objection is in carrying out their duties, Mr. Guconde and Ms. Davis-Crockwell did more than was necessary under Bermuda law. And because of that, they made these statements that they didn't need to make. And those statements are the statements that are providing the basis for their claim. So even though Newpoint wanted to buy a Bermuda insurance company stationed in Bermuda, and is alleging that a Bermuda government agency defamed them, they have not filed suit in Bermuda. Is that correct? That is my understanding. There's no pending action in Bermuda. Mr. Steinman may know otherwise, but that's my understanding. Okay. Are there any further questions? I think I used up my time, so I'm happy to answer any more questions. Judge Lee, do you have any more questions? No. All right. Thank you very much. Thank you. Let's go back to Mr. Steinman. You have two minutes and 42 seconds. Is your claim about improper conduct based on Bermuda statute? No, it's not, Your Honor. Our claim is based on improper conduct under California law. And which law is that? The law of defamation, common law. The fact that the defendants made the allegations, and the fact that they were Bermuda monetary authority officials, does not give them immunity. One of the arguments that the district court properly rejected was common law sovereign immunity, and that is based on the same types of concerns that the panel has raised. But I do want to go back to one point. Have you sued in Bermuda? Your client wanted to acquire a Bermuda insurance company based in Bermuda. You're suing over statements made by a Bermuda government agency, but you're not suing in Bermuda, correct? That's not correct, Your Honor. Have you sued in Bermuda? I'm sorry, Your Honor. Have you sued in Bermuda? Yes. Newpoint has initiated an administrative appeal in Bermuda of the administrative decision that is separate and apart from this action based on a violation of California law. That's just an appeal of the denial of your efforts on behalf of your client to acquire the Bermuda insurance company. That's not a defamation case, is it? No, we did not file a defamation case in Bermuda. Our clients did not. I'm sorry. If I may, Your Honor. Let me ask one more question. The first motion to dismiss order says that Newpoint did not plausibly allege that the defendants knew their conduct would result in lost business opportunities in California, would interfere with the plaintiff's contract centered in California, and the letters did not concern economic relationships centered in California. And I agree with the district court on that. You don't raise any new facts on any of these issues. You're still just repeating very conclusory, artful conclusions. What's your response to that? I don't believe that's correct, Your Honor. We did add allegations.  Give me the specific paragraph number. I have the first amended complaint before me, and I'd like to see it because I didn't see that. But if I missed it, then I apologize. Just give me a paragraph number, please. Paragraphs 12. Okay. That is the same statement we've been talking about. Statements were not only provided to Newpoint but were provided to third parties including persons in California. The malfeasance was aimed at Newport in California. It was calculated to and did damage and injure Newport's reputation, goodwill, and ability to conduct business, was calculated to and did jeopardize Newport's ability to conduct future business. I mean, these are all conclusions, right? Unless restrained, defendants will continue to maliciously publish and disseminate false and defamatory statements regarding Newport to Newport's irreparable injury and harm. I mean, this is all just stating the elements. Well, Your Honor, under Burry and under, we believe, California controlling law, in this case where there is no discovery and it's a facial challenge, the plaintiff need only make, quote, a prima facie showing of jurisdictional facts to withstand the motion to dismiss. In determining whether the plaintiff has met that burden, the court must accept as true all uncontroverted allegations in the complaint and must resolve all undisputed facts in favor of the plaintiff. We suggest that's not what the district court has done and that what Your Honor is asking is above that. But to get back, and that's Burry at page 1213. But there are new allegations in the First Amendment complaint. In paragraphs 12 and 18, plaintiff alleges that defendants knew their conduct would impact Newport's ability to operate the Citadel in California as well as impact Newport's ability to conduct future business in California, including its ability to acquire interest in other business to be run out of Newport's California office. Those facts were not alleged in the original complaint and it is our position that rather than accepting those allegations as true and giving Newport the benefit of the doubt, the district court did the reverse. And as this court has stated, if, first of all, if the district court wasn't satisfied with those facts, we believe Newport... Well, is this a fact? Let me read paragraph 18. Based on defendant's knowledge of Newport's principal place of business in Beverly Hills, defendants knew or should have known that their malfeasance would interfere with Newport's existing business and operations in California and cause Newport to lose potential future business opportunities centered in California. You keep saying these are facts. I've alleged facts. These are conclusions. Well, we believe that that's a sufficient prima facie showing, Your Honor. And under Burry, that's all that was necessary to make the pleading. But going back to the court's other comments, we believe that it's correct that this is not a 12b6 motion and even if it was, that these factual disputes can and should be resolved in discovery and on summary judgment, not at the pleading stage and certainly not in a challenge to personal jurisdiction. All right. All right. I have no further questions. Do my colleagues have any further questions? No questions. Judge Lee, all right. Thank you very much to counsel for your very, very helpful arguments. Thank you, Your Honors. We appreciate both of your participation in today's argument. Thank you all. We're adjourned. Thank you very much. All rise. This court for this session stands adjourned. Thank you.
judges: BEA, LEE, KOH